THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MELISSA L. SNYDER )
)
    Plaintiff, )
)
) Case No. 09 C 2926
)
) Magistrate Judge
) Arlander Keys
v. )
)
)
EASTER SEALS METROPOLITAN )
CHICAGO, INC., )
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff and Defendant settled the underlying litigation by oral agreement. In open court, the terms of the settlement agreement were placed on the record and agreed to by both parties. Subsequently, however, the parties were unable to agree upon the terms of the written agreement. Before the Court is Defendant Easter Seals Metropolitan Chicago, Inc.'s Motion to Enforce Settlement Agreement. For the reasons set forth below, Defendant's motion is granted consistent with the discussion herein.

### Factual Background

Melissa Snyder (Snyder) commenced this action against Easter Seals Metropolitan Chicago, Inc. (Easter Seals) on May 13, 2009. In her five-count complaint, she alleged sex discrimination and

retaliation in violation of 42 U.S.C. § 2000e-3, retaliation in contravention of 42 U.S.C. § 1981, discrimination and retaliation in violation of the Illinois Human Rights Act, and retaliation in contravention of ERISA. On September 21, 2009, the parties and their counsel attended a settlement conference facilitated by the Court. Following extensive negotiation, the parties advised the Court that they had reached a settlement. They proceeded to place the agreed upon terms on the record. The relevant portions of the ensuing dialogue follows:

| | |
|---|---|
| THE COURT: | We have been involved in a settlement conference for several hours. And we have come to an agreement on the terms of a settlement agreement which must be reduced to writing and signed by the parties, but we wanted to make sure that we're all on the same page and so there will be an enforceable agreement.<br><br>Now either counsel can state what the terms of the settlement agreement are, and I'll have Mr. Muri and Ms. Snyder indicate whether that's what they agreed to. |
| DEFENDANT'S COUNSEL:[1] | We have agreed to the following: Easter Seals or someone on its behalf will make payable a total of $160,000, which sum is to be divisible between attorney's fees to |

---

[1] In the transcript of the proceedings, certain statements are mistakenly ascribed to Plaintiff's attorney. The errors have been corrected in the Court's presentation of the discourse. While this is of no consequence and has no impact on the Court's decision, the Court makes this distinction for purposes of clarification.

2

|  |  |
|---|---|
|  | Mr. Secaras and a damage claim by Ms. Snyder. |
|  | The parties are each going to deny or we're going to deny any liability, the – but believe that settlement is in the best interest of everyone, rather than going forward because it is uncertain. And Ms. Snyder will indicate that she still believes that she's entitled to everything she's asked for. |
|  | In addition to the monetary payment, there will be a letter given to Ms. Snyder saying that the – her position was eliminated based upon a reorganization which was occasioned by the McGladrey report and a copy of the McGladrey report will be given to Ms. Snyder. |
|  | In addition she wishes a letter of recommendation which says that she functioned in the capacity of manager of human resources, which is comparable to vice president of human resources, in a satisfactory or even a good manner over the period of her employment. |
| THE COURT: | Okay. Now we have agreement non – you have non-admissions policy. You have a release – |
| DEFENDANT'S COUNSEL: | Oh, you know what, there was one other thing that I was going to bring up, and I apologize for not bringing it up earlier. |
|  | We had talked about in the back a mutual non-disparaging clause. That means we don't say anything bad about you, and you don't say anything bad about us. And this will be – also, and in addition, we're going to have a release which |

|                          | is a very broad release covering any and all claims which were brought or could have been brought and include the release of any – and the dismissal of any claims before the EEOC, the IDHR or any other body which may hear anything arising out of the employment. |
|---|---|
| THE COURT: | You agree to that, don't you, Ms. Snyder? |
| MS. SNYDER: | Yes. |
| THE COURT: | Okay. Because the mutual non-disparaging, like you said, you know, you're – you know, if – there has been some bad feelings I guess since this thing has happened, but just move on. Don't disparage them. They don't disparage you. It is mutual.<br><br>Then release of all claims relating to your employment, that either – that were brought, could have been brought.<br><br>And there was indication in your letter, Mr. Secaras, regarding, I'm assuming, that all of these other terms with a no – no seeking of reinstatement or applying for reemployment with Easter Seals, that's all as part of it, isn't it? Normally it is. |
| PLAINTIFF'S COUNSEL: | That's a normal part of the release agreement. And Mr. Chester has indicated he's got a standard form agreement, so – |
| THE COURT: | He's got it? |
| PLAINTIFF'S COUNSEL: | So – |
| THE COURT: | All right. |

| | |
|---|---|
| PLAINTIFF'S COUNSEL: | I'm happy to take a look at the agreement, and I'm sure we can work it out. |
| THE COURT: | Okay. So I guess that's about it. That's what you agreed to, Ms. Snyder? |
| MS. SNYDER: | Yes. |
| THE COURT: | On behalf of the company, Mr. Muri? |
| MR. MURI: | Yes, uh-huh. |
| THE COURT: | Thank you for your diligence and hard work and willingness to compromise your position in order to resolve this case. I think it is a good settlement for everybody. |

The parties agreed to submit their stipulation to dismiss by October 14, 2009. Though they subsequently went back and forth regarding the specifics of the agreement, they failed to produce a mutually agreeable document. When it became clear that a written agreement was not forthcoming, Defendant filed the instant motion seeking to enforce the oral agreement made before the Court.

## Discussion

"A motion to enforce a settlement agreement is essentially the same as a motion to enforce a contract." *Allstate Fin. Corp. v. Util. Trailer of Ill., Inc.*, 936 F. Supp. 525, 528 (N.D. Ill. 1996)(citing *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989); *Herron v. City of Chicago*, 618 F. Supp. 1405, 1409 (N.D. Ill. 1985)). Consequently, enforceability of a

settlement agreement is governed by local contract law. *Abbott Labs. v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387 (citing *Laserage Tech. Corp. v. Laserage Labs., Inc.*, 972 F.2d 799, 802 (7th Cir. 1992). Illinois law allows enforcement of an oral agreement to settle, like any contract, "as long as there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement." *Wilson v. Wilson*, 46 F.3d 660, 666 (7th Cir. 1995)(quoting *Brewer v. Nat'l R.R. Corp.*, 628 N.E.2d 331, 335 (Ill. App. Ct. 1993)). Though the law requires a meeting of the minds as to all material terms, *Abbott Labs.*, 164 F.3d at 387, "settlement agreements that do not explicitly resolve ancillary issues can nonetheless be enforceable." *Porter v. Chicago Bd. Of Educ.*, 981 F. Supp. 1129, 1131 n. 4 (N.D. Ill. 1997)(citing *Sheng v. Starkey Labs., Inc.*, 117 F.3d 1081, 1083 (8th Cir. 1997)). "The fact that the parties left some details for counsel to work out during later negotiations cannot be used to abrogate an otherwise valid agreement." *Id.* (quoting *Worthy v. McKesson Corp.*, 756 F.2d 1370, 1373 (8th Cir. 1985)).

While both parties concede that an enforceable agreement was reached on September 21, 2009, they request the Court's assistance in determining the legitimacy of certain components of the proposed written settlement agreements. Specifically, the parties raise issues regarding the letters of recommendation, the

release, and additional provisions not specifically discussed on the record.

## I. Letters

Defendant maintains that the letters offered as Exhibits A and B to its proposed Settlement Agreement and Release (Agreement) and the related provisions contained in the Agreement, accurately reflect the substance of the parties' oral agreement. Consequently, it maintains that the letters and applicable provisions should be enforced. Not surprisingly, Plaintiff disagrees and instead seeks enforcement of her rendering of the correspondence and relevant provisions.

In its Agreement, Defendant proposed two letters, both to be signed by Defendant's Chief Executive Officer. The text of the first letter, Exhibit A, follows:

> Melissa L. Snyder served as the Manager of Human Resources at Easter Seals Metropolitan Chicago from June 3, 2002 through January 22, 2009. The position of Manager of Human Resources during this time was the highest Human Resources position within the Easter Seals organization, functioned as a Vice President of Human Resources would in comparable organizations, and reported directly to the Chief Operating Officer. During her employment with Easter Seals, Ms. Snyder performed all of the tasks assigned to her in a professional manner and exhibited the skills expected for a high level human resources professional. Ms. Snyder's employment by Easter Seals ended as a result of Easter Seals reorganizing its management structure and eliminating the position of Manager of Human Resources.

Exhibit B, Easter Seals' second letter, provides:

> This letter will confirm that Easter Seals Metropolitan Chicago, Inc. employed Melissa L. Snyder in the position

7

of Manager of Human Resources until January 22, 2009. At that time, the position of Manager of Human Resources was eliminated based on the recommendations of an outside consultant, RSM McGladry [sic]. The McGladry [sic] report that was followed in reorganizing the management at Easter Seals is attached hereto.

Plaintiff, however, believing the proposed letters to be inconsistent with the terms of the parties' oral agreement, did some reorganizing of her own. She proposed two different letters. The first letter, to be signed by Defendant's Chief Executive Officer, states:

> Melissa L. Snyder served as the Director of Human Resources at Easter Seals Metropolitan Chicago from June 3, 2003 through January 22, 2009. During the tenure of her employment with Easter Seals, Ms. Snyder excelled in her duties as the Director of Human Resources and in many other qualities and attributes that employers seek when securing high-level promotable professions. The position of Director of Human Resources was the highest Human Resources position within the Easter Seals organization, functioned as a Vice President of Human Resources would in comparable organizations, and reported directly to the Chief Operating Officer.
>
> Ms. Snyder truly was an asset to our organization. She was an adaptable self-starter who worked tirelessly to transform Easter Seals' Human Resources Department and advocate for employees, despite continued financial constraints. Ms. Snyder's employment by Easter Seals ended as a result of Easter Seals reorganizing its management structure due to financial limitations and eliminating the position of Director of Human Resources.
>
> Ms. Snyder had an excellent rapport with the many constituents serviced by the Human Resources Department including employees, managers, clients, Board Members and other professional organizations. Her talents and skills would be an asset to any employer and I highly recommend Ms. Snyder for any endeavor she chooses to pursue.

The second letter proposed by Plaintiff, to be signed by

Defendant's Board Chairman, provides:

> I am pleased to write this letter of recommendation for Ms. Melissa Snyder. I worked with Melissa Snyder while I served as Chairman of the Board of Directors for Easter Seals Metropolitan Chicago. Melissa served as the Director of Human Resources for Easter Seals and in that capacity she was responsible for leading all human resource policies and initiatives for the organization.
>
> Melissa's position of Director of Human Resources was the highest human resources position with the Easter Seals organization. Ms. Snyder's employment with Easter Seals ended when Easter Seals eliminated the position of Director of Human Resources after reorganizing its management structure due to financial limitations.
>
> As a human resources professional, Melissa performed at the highest level in establishing strategic objectives as well as managing the tactical delivery of cost-effective Human Resource solutions. In her time with Easter Seals, Melissa proved herself to be an extremely intelligent, knowledgeable, conscientious, diligent and motivated individual, establishing equally strong working relationships with the Board of Directors, the Executive Management team and the employees alike.
>
> I am confident that Melissa will be tremendously successful in her future career, and am delighted to provide Melissa with the highest of recommendations.

Suffice it to say, the parties reached an impasse on the language of the letters. A review of the transcript and the relevant law, however, reveals that this stalemate is unwarranted.

As an initial matter, the Court holds that Defendant is required to use Plaintiff's former job title, Director of Human Resources, in the correspondence at issue, as well as in the relevant provisions of the final settlement agreement. The Court, in the interest of maintaining the consistency and

9

integrity of both Plaintiff's and Defendant's files,[2] will not hold Ms. Snyder's failure to object on the record to counsel's representation that she functioned as "manager of human resources" against her. Unfortunately for Plaintiff, the Court will not be as forgiving in other regards. Indeed, the Court finds that the letters and associated provisions proposed by Defendant accurately reflect the mutually agreed upon terms.

The transcript of the September 21, 2009, proceeding, presented *supra*, demonstrates that the parties agreed that Defendant would provide Plaintiff with two letters. The first letter was to provide details regarding Plaintiff's employment and job performance; the second was to state the reason for her termination. Though Defendant proposed two letters, letters which practically mirror the language read in open court and agreed to by Plaintiff, she now argues that the substance of the letters is not consistent with the agreement placed on the record.

Specifically, Plaintiff maintains that Defendant's characterization of her work as "satisfactory or even good," is "contradictory and inaccurate." To bolster her argument, she

---

[2] For the same reasons, the Court finds no reason for Defendant, in this one instance, to deviate from its practices regarding the retention of employee grievances. Thus, the Court orders Defendant to adopt the language proposed by Plaintiff in paragraph 8, regarding the grievances that she submitted to Easter Seals.

references past performance evaluations in which she was described as, *inter alia*, "a great Director of Human Resources" and "a great resource." Having received such praise, she believes that it must be incorporated into Defendant's letter. Ms. Snyder's arguments, however, are misplaced. To be sure, the appropriate time for her to have made such a request was during settlement negotiations. Had Defendant agreed to the proposed language, it would then have been her responsibility to ensure that the terms were reflected in the record. She did not. Instead, when asked whether she agreed that she would be provided with a letter stating "her position was eliminated based upon a reorganization" and an additional letter that said she performed her job responsibilities "in a satisfactory or even good manner," she said yes. These were the only two letters discussed and agreed upon. Plaintiff concedes as much by stating that the correspondence should include "not only the specifically agreed to items" but also "positive statements referencing her accomplishments while employed as the Director of Human Resources at Easter Seals." While Defendant certainly could go beyond the scope of the agreement and include language regarding the accolades, the Court will not order it to do so.

Nor is it necessary, as Plaintiff argues, to draw a distinction between a "recommendation" and "reference" letter. Put simply, the label given the letter is of no moment. While

11

the Court acknowledges that Defendant agreed to provide a "letter of recommendation," it notes that many people and institutions (including courts) use the two terms interchangeably. *See e.g., Westlake v. Ind. Univ.*, No. 3:03-CV-572 RM, 2005 U.S. Dist. LEXIS 13828, at *12-14 (N.D. Ind. Apr. 5, 2005); *Huffman v. New Prime, Inc.*, No. 01-3144-CV-S-ODS-ECF, 2003 U.S. Dist. LEXIS 26205, at *6, 10 (W.D. Mo. Dec. 23, 2003); *Dingman v. Delta Health Group*, 26 F. Supp. 2d 1349, 1354 (S.D. Fla. 1998); *Seattle Sec. Servs., Inc. v. United States*, 45 Fed. Cl. 560, 569 (Fed. Cl. 1999). But apart from this is the fact that Defendant specified on the record what the recommendation letter was to state. Specifically, Defendant agreed to provide "a letter of recommendation which says that [Plaintiff] functioned in the capacity of manager of human resources, which is comparable to vice president of human resources, in a satisfactory or even a good manner." And contrary to Plaintiff's assertion that the letter proffered by Defendant did not contain "any reference to her job performance," the Court finds that the language that Plaintiff "performed all of the tasks assigned to her in a professional manner and exhibited the skills expected for a high level human resources professional," is consistent with Defendant's promise to state that Plaintiff performed her job tasks in a "satisfactory or even a good manner." Because the letters correctly reflect the terms agreed to in open court,

Plaintiff will not now be allowed to renegotiate the terms of the settlement by requiring the inclusion of additional (not agreed upon) language. Thus, the Court enforces the letters and applicable agreement provisions.

**II. Release**

Easter Seals argues that the language regarding the release contained in its proposed Agreement accurately reflects the parties' agreement.

In its Agreement, Defendant proposed the following language regarding the release of Plaintiff's claims:

> It is the intention of the parties not to limit this release to claims arising out of or in the scope of Snyder's employment by [Easter Seals] and to make this release as broad and as general as the law permits. Excluded from this waiver and release is any claim or right which cannot be waived by law, including all claims arising after the date of this Agreement, the right to file a charge with or participate in an investigation conducted by an administrative agency, and the right to enforce this Agreement. Snyder is waiving, however, Snyder's right to any monetary recovery if the EEOC, United States Department of Labor, the Illinois Department of Labor, or any other federal, state or local agency pursues any claim on Snyder's behalf which is related to her employment by [Easter Seals].

In her proposed draft, Plaintiff struck the first sentence as well as the last.

Again, the Court finds that the applicable language in Defendant's Agreement is consistent with the terms agreed upon by the parties. To be sure, on the record, counsel stated – and Plaintiff agreed – that the parties were consenting to "a very

13

broad release covering any and all claims which were brought or could have been brought." This language is in concert with the provisions that Plaintiff disputes. Additionally, the Court reiterated that the release encompassed, "all claims relating to [Plaintiff's] employment . . . that were brought [or] could have been brought." To this, Plaintiff did not object. Instead, she expressed her agreement.

Further, a release is generally sought to shield a party from liability arising from the dispute at issue. In the case *sub judice*, Defendant agreed to make a monetary payment to Plaintiff in exchange for, *inter alia*, her agreement to release it from any additional claims. Under Plaintiff's revisions, however, Defendant would remain potentially liable to Plaintiff, albeit not by suits initiated at her request but in a secondary fashion. The language read into the record, and agreed to by Plaintiff, however, foreclosed this possibility. Because Plaintiff agreed to the terms of the release on the record, and the provisions to which Plaintiff now objects are not inconsistent with the agreement as read into the record, the provisions will be enforced. *See Doi v. Halekulani Corp.*, 276 F.3d 1131 (9th Cir. 2002).

### III. Provisions Not Discussed on the Record

Defendant proposed other provisions in the Agreement that were not specifically discussed on the record. With the

exception of one, Plaintiff failed to provide any depth to her arguments regarding the provisions, resting instead on a conclusory allegation that they are "material" and were not discussed; thus, they are unenforceable. The arguments relating to these provisions, specifically, Paragraph 11; Paragraph 12b; Paragraph 15; and Paragraphs 16-27 can be disposed of in short order.[3] Indeed, Plaintiff agreed on the record that, in addition to the specific terms agreed upon, the parties would use a "standard form agreement." The paragraphs at issue contain very standard clauses, and there is no reason to think that they represent any overreaching by Defendant. Consequently, Plaintiff "cannot now raise eleventh-hour challenges in an attempt to create material issues of fact and derail a binding settlement reached in open court." *Wilson v. Wilson*, 46 F.3d 660, 665-66 (7th Cir. 1995).

And as for the appropriate person to respond to inquiries regarding Plaintiff, the Court enforces Defendant's proposed language, and thereby declines to require, as requested by Plaintiff, that either Defendant's Chief Executive Officer or Chief Operating Officer respond to inquiries. There is no reason to order Defendant to change its normal operating procedure for one (former) employee. While the Court notes Plaintiff's

---

[3] Plaintiff also takes issue with the unilateral nature of Paragraph 14. In response, Defendant has agreed to make the provision mutual.

concerns, it is confident that the Agreement provides her with recourse should someone verifying a reference be provided with inappropriate information.

## Conclusion

For the reasons set forth above, Defendant Easter Seals Metropolitan Chicago, Inc.'s Motion to Enforce Settlement Agreement is granted consistent with the discussion above. Accordingly, the Court orders Defendant to forward to Plaintiff and the Court a final copy of the Agreement with the necessary revisions. Specifically, Defendant is to refer to Plaintiff as Director of Human Resources, retain Plaintiff's proposed language in Paragraph 8 regarding the retention of grievances, and adopt language that indicates the mutuality of Paragraph 14. In addition to providing Plaintiff with a copy of the final Agreement, which she is expected to sign, Defendant is to provide her with the $160,000 payment provided for by the parties' agreement, along with a stipulation to dismiss the case. In the event that Plaintiff fails to sign the Agreement and stipulation within twenty-one days of this Memorandum Opinion and Order, the Court will, upon motion, enter an order dismissing this action with prejudice.

Date: January 29, 2010         E N T E R E D:

*[signature]*

MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT